UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| GARRY A. HAMILTON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FORT WAYNE COMMUNITY SCHOOLS, )<br>)<br>Defendant. ) | Cause No. 1:23-CV-34-HAB |

**OPINION AND ORDER**

Plaintiff, an African American, was passed over three times for the Security Supervisor position with Defendant Fort Wayne Community Schools ("FWCS"). Believing the decisions to be race-based, Plaintiff sued, alleging violations of Title VII and 42 U.S.C. § 1981. FWCS has moved for summary judgment on those claims. (ECF No. 13). Even though Plaintiff received an extension to respond (ECF No. 18), FWCS' motion is unopposed. Because FWCS has shown that it is entitled to judgment as a matter of law, its motion will be granted.

**I.      Factual Background**

In 2019, FWCS created the position of Security Supervisor. The position was created to provide greater assistance for FWCS' expanding security and student safety needs. Michael Manuel ("Manuel"), FWCS' Director of Security, made the final hiring decision.

Eleven qualified candidates, including Plaintiff, applied and were chosen for interviews. FWCS' interview process involved a panel of interviewers, all employees of FWCS. Each interviewer used a scoring sheet to grade the applicant's response to several pre-determined questions posed to every candidate. In scoring the candidates, the interviewers considered their

own experience with FWCS, FWCS' security needs, and the candidates' explanations of how their experience might aid them in the Security Supervisor position. Race was not considered.

Because of the large number of qualified applicants, Manuel conducted two rounds of interviews. Questions in the first round were general, assessing the candidates' expectations and understanding of the position. Plaintiff and Daniel Nigro ("Nigro"), a white male, received the highest scores from the first round and were the only two selected to proceed to the second round.

In the second round, questions were more position-specific, asking how the candidates' experience would help them in the job and how they would deal with hypothetical situations. Nigro performed much better in the second round. Interviewers noted his familiarity with FWCS' security needs, his student-centered focus, and the detail in his answers. Because Nigro had the highest cumulative score from the two rounds of interviews, he was offered, and accepted, the job. Plaintiff was informed of the decision in November 2019.

Two years later, Nigro resigned, and the position was again opened for applications. This time, FWCS' job posting contained several minimum requirements, including an associate degree in criminal justice or a related field. Three individuals, including Plaintiff and Thomas Miller ("Miller"), a white male, applied and were selected for interviews. Because of the small number of applicants, only one round of interviews was conducted.

Miller received the highest scores from the interviewers. They specifically noted Miller's experience as a student resource officer ("SRO") in East Allen County Schools and believed that Miller had more practical experience in school-specific safety needs. Plaintiff did not have similar experience in a school setting.

Relying on the interview scores, Manuel selected Miller for the job. Manuel called Plaintiff to tell him that he had not been selected. During that conversation, Plaintiff stated, "this is the second time . . . a male white candidate was selected over me."

While Miller's hiring was being finalized, FWCS' HR department discovered that Miller did not have the required associate degree. The position was reopened, and two additional applicants were interviewed. Neither Plaintiff nor the other unsuccessful candidate from the last round of 2021 interviews were interviewed again, as Manuel had already concluded that they lacked the desired experience of school-based security work.

When both new applicants proved disappointing, Manuel revisited the minimum qualifications. He determined that years of school-based security experience were more valuable than an associate degree. So he consulted with Charles Cammack ("Cammack"), Manuel's supervisor, and Cammack advised that minimum qualifications could be waived if the situation justified. Manuel sought, and received, a waiver, and offered the Security Supervisor to Miller as long as Miller obtained an associate degree within three years. Miller accepted and timely completed his degree.

During his deposition, Plaintiff admitted that he has no evidence of racial bias in either the 2019 or 2021 interview processes. In support of his claim of racial discrimination in the 2021 process, Plaintiff testified that Miller "wasn't qualified for the job, and so if you wasn't qualified for the job and they repost it, then of course I'm discriminated against." Plaintiff also admitted that his only evidence of retaliation was that he wasn't interviewed again after Miller's educational shortcomings emerged. Finally, Plaintiff admitted that he has no evidence that any hiring decision was made pursuant to a discriminatory policy or custom.

**II.     Legal Analysis**

**A.     *Summary Judgment Standard***

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists cannot create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A court is not "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

That Plaintiff has not responded to FWCS' motion does not mean that summary judgment must be entered. Instead, the Court must consider "the motion on its merits, in light of the record

as constituted, in order to determine whether judgment would be legally appropriate." *Pike v. Nick's Eng. Hut, Inc.*, 937 F. Supp. 2d 956, 969 (S.D. Ind. 2013).

**B.**     ***Any Claims Related to the 2019 Hiring Process are Time-Barred***

As stated above, Plaintiff sues under Title VII and § 1981. But because FWCS is a state actor, the § 1981 claim is properly construed as a claim under § 1983. *Campbell v. Forest Pres. Dist. of Cook Cty, Ill.*, 752 F.3d 665, 667 (7th Cir. 2014). Neither claim was timely pursued in this 2023 lawsuit.

Title VII first. Under Title VII, an employee has 300 days from the occurrence of an alleged discriminatory or retaliatory act to file a timely charge with the EEOC or the relevant state agency, here the ICRC. *See Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004). The 300-day limitations period starts to run with each discriminatory act, not the point at which the consequences become apparent. *Finnane v. Pentel of Am., Ltd.*, 43 F. Supp. 2d 891, 895 (N.D. Ill. 1999). When a plaintiff attempts to bring claims that fall outside the 300-day period, those claims must be dismissed. *See Stepney*, 392 F.3d at 241; *Finnane*, 43 F. Supp. 2d at 898 (dismissing Title VII allegations that occurred outside the 300-day window); *Chaudhry v. Nucor Steel-Indiana*, 546 F.3d 832, 836-37 (7th Cir. 2008) (same).

The only EEOC charge is the December 2021 charge attached to Plaintiff's complaint. (ECF No. 5 at 4-5). That's well-outside the 300-day window started by the 2019 hiring decision. Plaintiff cannot pursue a Title VII claim related to the 2019 hiring process.

His § 1983 claim fares no better. "Claims brought under § 1983 are governed by the statute of limitations for personal-injury claims in the state where the plaintiff's injury occurred." *Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016). In Indiana, that's two years. *Behav. Institute of Indiana, LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005). Any claim

5

related to the 2019 hiring process, then, needed to be brought by November 2021. This case was not, so the statute of limitations expired.

### C.     *Plaintiff Cannot Establish a* Monell *Claim Against FWCS*

Moving on to the 2021 hirings, the Court finds that Plaintiff's claim against FWCS under § 1983 fails as a matter of law. Under § 1983, a municipality or other local governmental entity may not be held liable for an employee's unconstitutional acts "*solely . . .* on a respondeat superior theory." *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) (emphasis in original). Instead, a municipality may be liable under § 1983 "when execution of a government's policy or custom . . . inflicts the injury" the plaintiff suffered. *Id*. at 694. *Monell* liability extends to any "official policy, widespread custom, or action by an official with policy-making authority" that "was the 'moving force' behind his constitutional injury." *Dixon v. Cnty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016).

Plaintiff admitted that he has no evidence that any hiring decision was made pursuant to a discriminatory policy or custom. Nor can Manuel's hiring decisions be characterized as an action of an official with policy-making authority because, under Indiana law, "the board of school trustees is the final policymaker for a public school corporation." *Kittle on behalf of J.M. v. Duneland Sch. Corp.*, --- F.3d ---, 2023 WL 3794191, at *4 (N.D. Ind. Oct. 13, 2023). Plaintiff cannot satisfy *Monell*, so his § 1983 claim against FWCS fails.

### D.     *Plaintiff's Title VII Claims Also Fail*

This leaves Plaintiff's Title VII claims against FWCS. Plaintiff claims that he was discriminated against because of his race. He also claims that he was retaliated against for making the statement that he was passed over twice for a white man. The Court finds no merit in either claim.

6

**1.** *Race Discrimination*

Discrimination claims may be reviewed on summary judgment under the direct or the burden-shifting methodologies created by *McDonnell Douglas. v. Green*, 411 U.S. 792 (1973). *See Smith v. Chicago Transit Auth.,* 806 F.3d 900, 905 (7th Cir. 2015) (noting the *McDonnell Douglas* framework is just "a formal way of analyzing a discrimination case when a certain kind of circumstantial evidence – evidence that similarly situated employees not in the plaintiff's protected class were treated better – would permit a jury to infer discriminatory intent."). When a plaintiff responds to a motion for summary judgment on an intentional discrimination claim by relying on the burden-shifting framework created by *McDonnell Douglas* a court should assess the case in those terms. *Id.*; *see also Ferrill v. Oak-Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017) (noting that *McDonnell Douglas* burden-shifting analysis has not been displaced).

Still, in all cases, the question at summary judgment remains: has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination? *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (instructing courts to stop separating "direct" from "indirect" evidence and instructing, instead, that the test is "simply whether the evidence would permit a reasonable factfinder to conclude the plaintiff's [protected status] caused the discharge or other adverse employment action).

Under the burden shifting methodology, Plaintiff must first establish several prima facie elements of discrimination. Plaintiff must show that: (1) he is a member of a protected class; (2) he applied for, and was qualified for, an open position; (3) the employer rejected him for the position; and (4) the employer filled the position with an individual outside of his protected class, or the position remained vacant. *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002).

If Plaintiff establishes a prima facie case, the burden of production shifts to FWCS to offer a permissible, nondiscriminatory reason for the adverse employment action. *Id.* at 694-95. If FWCS carries this burden, Plaintiff must show that FWCS' purported reasons are a pretext for discrimination or that the decision was tainted by impermissible, race-based motives. *Id*. at 695 "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

The Court finds that it can resolve Plaintiff's claims by going straight to the pretext inquiry. *See Holmberg v. Baxter Healthcare Corp.*, 901 F.2d 1387, 1391 (7th Cir. 1990) (where plaintiff has not shown pretext, it is not necessary to decide whether a prima facie case has been made). The evidence shows that Miller was rated more highly than Plaintiff by the interviewers. It also shows that Miller had a wealth of school-specific experience that Plaintiff did not have. The Court finds that both are non-pretextual reasons to hire Miller over Plaintiff. *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 500 (7th Cir. 2017) (pretext means "a lie" or a "phony reason" for the employment action).

The Court is given some pause by FWCS' decision to waive the eligibility requirements for Miller. *Barnes-Staples v. Carnahan*, 88 F.4th 712, 717 (7th Cir. 2023) ("We have placed a particular emphasis . . . when an employer has applied its policies differently between protected-class and non-protected-class members."). But Plaintiff, who had a degree in social work—barely related to criminal justice—can hardly be heard to complain about this departure. And the Court is not here to second-guess Manuel's apparently reasonable decision that years of school-specific safety experience was more important than a decades-old two-year degree.

The evidence shows that Plaintiff was second-choice candidate not once, not twice, but three times. It's true that the first-choice candidate each time was white, but that doesn't mean that Plaintiff faced race-based discrimination. Instead, it means only that someone of a different race was more qualified than him. Summary judgment on Plaintiff's Title VII discrimination claim is appropriate.

**2.**     *Retaliation*

All that remains is Plaintiff's claim that he was not interviewed for a third time or hired in retaliation for his statement to Manuel that he had been passed over twice for white men. In pursuing such a claim, "plaintiffs must offer evidence of three elements: (1) they engaged in protected activity, (2) they suffered adverse employment actions, and (3) there was a causal connection between the protected activity and the adverse employment actions." *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015). The same burden-shifting under *McDonnell Douglas* that applies to the discrimination case also applies to Plaintiff's retaliation claim. *Miller v. Am. Fam. Mut. Ins.*, 203 F.3d 997, 1007 (7th Cir. 2000).

Where Plaintiff's case fails is on causation. Plaintiff must establish "but-for" causation; that is, that he would have been hired if not for Plaintiff's protected activity. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Plaintiff may prove but-for causation through direct evidence, "which would entail something akin to an admission by the employer ('I'm firing you because you had the nerve to accuse me of sex discrimination!')" or, more commonly, through circumstantial evidence presenting a "convincing mosaic" that would permit the same inference without the employer's admission. *See Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012) Evidence common to establish a "convincing mosaic" includes "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence,

9

statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Hobgood v. Illinois Gaming Bd.*, 731 F.3d 635, 643-44 (7th Cir. 2013).

Put simply, there is no evidence that connects Plaintiff's statement with FWCS' decision not to interview him for a third time or hire him for the Security Supervisor position. Instead, the evidence shows that Plaintiff lacked the school-based security experience that the interviewers valued. With Plaintiff offering no evidence of causation, the Court has little trouble entering summary judgment on Plaintiff's Title VII retaliation claim.

**III.   Conclusion**

For these reasons, FWCS' motion for summary judgment (ECF No. 13) is GRANTED. The Clerk is DIRECTED to enter judgment against Plaintiff and for FWCS.

SO ORDERED on May 1, 2024.

 s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT